IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ESTATE OF MARIBETH PRESNAL, AND EDWIN M. PRESNAL JR., INDIVIDUALLY AND AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF MARIBETH PRESNAL, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) | CASE NO.: |
| vs. | ) ) | |
| DEARBORN NATIONAL LIFE INSURANCE COMPANY AND, BEACON HEALTH SYSTEM, INC, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, The Estate of Maribeth Presnal and Edwin M. Presnal Jr, individually and as the personal representative of the Estate of Maribeth Presnal, by and through the undersigned counsel, and for their Complaint against Defendant, Dearborn National Life Insurance Company and Beacon Health Systems, Inc, alleges as follows:

## PARTIES

1. The Plaintiff, The Estate of Maribeth Presnal, is an estate opened and created by order of the St. Joseph Probate Court in South Bend, Indiana. The St. Joseph Probate Court issued letters of administration to Edwin M. Presnal, Jr., as personal representative.

2. At all relevant times, the Plaintiff, Edwin M. Presnal, Jr., (Mike Presnal), was Maribeth Presnal's husband and was the beneficiary of Maribeth Presnal's Basic Life Insurance benefits.

3. Defendant, Dearborn National life Insurance Company (Dearborn), is a life insurance company, registered by the Indiana Department of Insurance.

4. The Defendant, Beacon Health System, Inc, (Beacon), is a corporation organized under the laws of the State of Indiana which owns and operates hospitals in and around South Bend, Indiana.

## JURISDICTION AND VENUE

5. This action is brought on behalf of Plaintiffs, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.* ("ERISA").

6. Jurisdiction is premised upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. Specifically, this Court has jurisdiction over this section pursuant to 29 U.S.C. § 1132(e), the jurisdictional provision of ERISA.

7. Venue of this action is properly before this Court pursuant to 28 U. S. C. § 1391(e) and 29 U.S.C. § 1132(e)(2).

## FACTUAL BACKGROUND

8. At all relevant times, Maribeth Presnal, (Maribeth) was an employee of Beacon as a registered nurse and Director of Nursing in the Cardiovascular Services Department at Beacon.

9. At all relevant times Maribeth was a full-time employee of Beacon and was eligible for and participated in an Employee Welfare Benefit Plan offered by Beacon, which provided among other benefits, basic life insurance, pursuant to a Term Life and AD&D Insurance Policy issued by Dearborn. (Policy). The Policy's effective date was January 1, 2016, and the policy holder is Beacon. Attached hereto and marked as Exhibit "A" is a copy of the policy, which is incorporated here in its entirety.

10. At all relevant times, Dearborn and Beacon were administrators and fiduciaries under the policy. In particular, Beacon performs exit interviews of its employees who are terminating their employment. As a part of the exit interview process, Beacon's Human Resources

Department routinely discusses and advises the employees of their benefit rights, including health and life benefits.

11. On December 31, 2016, Maribeth terminated her employment from Beacon.

12. Prior to Maribeth's termination it was well known that Maribeth displayed cognitive impairments. As a result of Maribeth's cognitive impairments, she was demoted due to the inability to multi-function, overall disorganization, forgetfulness, and other cognitive problems.

13. Prior to her termination from Beacon, Maribeth confided in fellow employees and supervisors that she was struggling with the performance of her employment duties, specifically, those duties dependent upon memory and repetition.

14. In October 2016, Maribeth, who was once adept and proficient with Beacon's EMR (Electronic Medical Records) system, could no longer use it and became dependent upon an instructional guide to operate the EMR system. Even with the instructional guide, Maribeth had significant problems operating the EMR.

15. An employee of Beacon's H.R. Department told Mike Presnal that (prior to Maribeth's termination) she knew Maribeth had a (cognitive) problem and could see it in her face. The same employee of Beacon's H.R. Department related a conversation she had with Maribeth. Maribeth insisted to this employee (of the H.R. Department) that a pair of "flip-flops" were hers, even though they unquestionably and obviously did not belong to Maribeth. This same employee (of Beacon's H.R. Department) told Mike Presnal that she and other employees of Beacon's H.R. Department pleaded with Maribeth to get help and not resign her employment.

16. A few months following Maribeth's termination she was diagnosed with Frontotemporal Dementia (FTD).

17. Maribeth was diagnosed and treated by a neurologist at a Mayo Clinic. The

neurologist stated Maribeth suffered from FTD, which is described as a "progressive neurodegenerative disease (which) causes executive dysfunction and impairs a patient's judgment, insight, and decision-making abilities."

18. At all relevant times, the policy issued insured Maribeth for basic term life insurance in the amount of $145,000.

19. The Policy specifically provided:

> **For Basic Life:**
>
> "If you are disabled September 1, 1996, or after and are disabled due to illness or injury then your coverage will continue for 60 months, provided all premiums are paid when due, the policy is in force, and your coverage is not replaced with group life insurance provided by a new carrier."

20. At no time did Maribeth ever have replacement group insurance coverage.

21. The policy permitted Maribeth to convert the basic life coverage to a personal Policy within 30 days of her termination.

22. Maribeth's neurologist stated at the time of Maribeth's termination, she did not. properly carry forward her life insurance because she was incapable of understanding the benefits and consequences of such a decision.

23. Despite Beacon's knowledge, and the knowledge of their H.R. Department, that Maribeth had serious cognitive problems, the Beacon H.R. Department failed to have an exit interview with Maribeth and failed to advise her of her benefit rights upon termination of her employment.

24. At all relevant times, Dearborn knew Maribeth was cognitively impaired due to FTD and deemed her totally disabled under the Beacon LTD Policy. Moreover, Dearborn knew that Maribeth was deemed totally disabled by the Social Security Administration and deducted Maribeth's SSDI benefits from her monthly LTD Benefits.

25. Approximately three years after Maribeth's termination, Mike Presnal became

aware that Maribeth may have had group life insurance under Beacon Employee Welfare Benefit Plan and approached Dearborn thinking she had voluntary Life Insurance and argued that her coverage should remain in effect due to the waiver of premium clause. Dearborn notified Mike Presnal that Maribeth never had voluntary life insurance but was only insured with basic life insurance. As a result, Mike Presnal offered to pay the premiums and advised Dearborn neither he nor Maribeth were notified of her ongoing coverage rights under the basic life insurance.

26. Dearborn also notified Mike Presnal that Maribeth's rights under her basic life insurance terminated due to her failure to convert the basic life to an individual policy within 30 days.

27. At all relevant times, before and after Maribeth's termination, Maribeth was mentally and cognitively incapacitated from managing her affairs including the ability to understand her rights under the basic life insurance, the need to continue paying premiums, and the requirement to convert her basic life insurance in 30 days to a personal policy.

28. On December 4, 2021, Maribeth died as a result of complications to FTD.

29. Thereafter, Mike Presnal made a claim to Dearborn for life insurance benefits under Maribeth's basic life insurance.

30. Dearborn denied Mike Presnal's claim on the basis that Maribeth never converted her basic life insurance.

31. Mike Presnal exhausted all administrative remedies in connection with the claim to Dearborn.

32. Once Dearborn denied Mike Presnal's claim, he made a claim against Beacon and Beacon denied the claim. Mike Presnal exhausted all administrative remedies in connection with his claim to Beacon.

33. Mike Presnal reasonably performed the conditions related to the policy and claims.

## ERISA CLAIMS

34. The Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

35. The Policy issued by Dearborn and owned by Beacon constitutes an employee welfare benefit plan pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et. seq.*

36. Dearborn was and is the administrator and fiduciary of the Policy, as well as the insurer and party obligated to pay benefits due under the Policy.

37. At all relevant times, Maribeth was a participant and insured under the basic life provision of the Policy.

38. At all relevant times, Mike Presnal was the beneficiary of Maribeth's basic life coverage.

39. Maribeth's time to pay her premiums and convert her basic life coverage to an individual policy is equitably tolled due to Maribeth's incapacity as described above.

40. As described above, Beacon was a fiduciary to Maribeth at the time of her termination.

41. Beacon breached its fiduciary duty owed to Maribeth by failing to conduct an exit interview and inform Maribeth of her rights under the Policy and/or explain to Michael Presnal Maribeth's rights under the Policy at the time of her termination.

42. Dearborn's conduct and denial of benefits was arbitrary, capricious, erroneous, and unreasonable.

43. The conduct and actions of Dearborn and Beacon entitle the Plaintiffs to an award of reasonable attorneys' fees, interest, and costs.

**WHEREFORE**, the Plaintiffs respectfully request the Court to enter judgment against the

Defendant, to compel the Defendants to pay the Plaintiffs all life insurance benefits under the basic life provision of the Policy, and award all appropriate relief pursuant to ERISA, 29 U. S. C. § 1001, *et. Seq.*, including reasonable attorney's fees, interest, costs and for all other just and proper relief.

Respectfully submitted,

By: /s/ Robert E. Saint
    Robert E. Saint, Esq., Attorney No. 1566-49
    Of Counsel:
    EMSWILLER, WILLIAMS, NOLAND & CLARKE, LLC
    8500 Keystone Crossing, Suite 500
    Indianapolis, IN 46240-2461
    Phone:  (317) 257-8787
    Fax:    (317) 257-9042
    Email:  rsaint@ewnc-law.com

## **EXHIBIT A**

USDC IN/ND case 3:23-cv-00290-CCB document 2 filed 04/13/23 page 8 of 8