UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ESTATE OF MARIBETH PRESNAL, <br> and EDWIN M. PRESNAL JR., Individually <br> and as the Personal Representative of the <br> Estate of Maribeth Presnal, <br><br>    Plaintiff, <br><br>       v. <br><br> DEARBORN NATIONAL LIFE <br> INSURANCE COMPANY and <br> BEACON HEALTH SYSTEM, INC. <br><br>    Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CASE NO.: 3:23-cv-0290-HAB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**OPINION AND ORDER**

Maribeth Presnal ("Maribeth") was a nurse and employee of Defendant, Beacon Health System Inc. ("Beacon"), who qualified for an Employee Welfare Benefit Plan. Under the Plan, Maribeth enrolled in basic life insurance. When Maribeth began experiencing cognitive impairments, she terminated her employment with Beacon. Beacon did not conduct an exit interview. When her husband and sole beneficiary, Plaintiff Edwin J. Presnal Jr. ("Edwin"), applied for the life insurance benefits after his wife's passing, his claim was denied because Maribeth never converted her basic life insurance policy to a personal policy. Thus, Beacon informed Edwin that Maribeth's coverage had terminated.

Edwin sued Defendants, Beacon and Dearborn National Life Insurance Company ("Dearborn"), under the Employee Retirement Income Security Act ("ERISA") alleging that Beacon breached its fiduciary duty by not conducting an exit interview and failing to inform Maribeth or Edwin of their rights under the Plan. (ECF No. 2). Beacon moved to dismiss Plaintiffs'

1

claims against it based on three grounds. (ECF No. 13). Beacon's motion is fully briefed (ECF Nos. 13, 15, 16, 19) and ripe for ruling.

## I. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted); *see also Ray v. City of Chi.*, 629 F.3d 660, 662-63 (7th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When analyzing a motion to dismiss a claim under Rule 12(b)(6), the factual allegations in the complaint must be accepted as true and viewed in the light most favorable to the plaintiff. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1006 (7th Cir. 2000).

That said, the Court is not "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Bielanski v. Cty. Of Kane,* 550 F.3d 632 Cir. 2008). And "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

## II. Well-Pleaded Facts

Beacon is an Indiana corporation which owns and operates hospitals in South Bend, Indiana. (ECF No. 2, ¶ 4). Beacon employed Maribeth as a full-time registered nurse and Director of Nursing in the Cardiovascular Services Department. (*Id.* at ¶¶ 8-9). Thus, she was eligible for and participated in an Employee Welfare Benefit Plan ("Policy") offered by Beacon. (*Id.* at ¶ 9). Under the Policy, Maribeth enrolled in basic term life insurance in the amount of $145,000. (*Id.* at

2

¶ 18). She named her husband, Edwin, as the sole beneficiary. (*Id.* at ¶¶ 2, 25). Dearborn and Beacon were administrators and fiduciaries of the Policy. (*Id.* at ¶ 10).

At some point, Maribeth began displaying cognitive impairments for which she was demoted because of her inability to multi-function, overall disorganization, and forgetfulness. (*Id.* at ¶ 12). Maribeth noticed the problems herself and confided in fellow Beacon employees that she was struggling because of such impairments. (*Id.* at ¶ 13). An employee of Beacon's human resources department told Edwin that she knew of Maribeth's cognitive problems. (*Id.* at ¶ 15). And the same employee pleaded with Maribeth to get help rather than resign. (*Id.*).

Still Maribeth terminated her employment with Beacon on December 31, 2016. (*Id.* at ¶ 11). Beacon performs exit interviews when employees terminate their employment in which Beacon's Human Resources Department routinely discusses and advises the employees of their benefit rights, including health and life insurance benefits. (*Id.* at ¶ 10). Yet Beacon's Human Resources Department did not conduct an exit interview with Maribeth. (*Id.* at ¶ 23). Nor did they advise Maribeth of her rights under the Policy after termination. (*Id.*).

The Policy gave Maribeth the option of converting her basic life insurance coverage to a personal policy within thirty days of her termination. (*Id.* at ¶ 21). Maribeth never converted the Policy. (*Id.* at ¶ 22). But the Policy did contain a disability clause which continues coverage if the insured becomes disabled:

> For Basic Life:
>
> If you are disabled September 1, 1996, or after and are disabled due to illness or injury then your coverage will continue for 60 months, provided all premiums are paid when due, the policy is in force, and your coverage is not replaced with group life insurance provided by a new carrier.

(*Id.* at ¶ 19). Yet Maribeth failed to make her premium payments necessary to continue coverage under the clause. (*Id.* at ¶ 25). As a result, her basic life insurance coverage terminated. (*Id.* at ¶

3

26).

Months after Maribeth's termination, she was diagnosed with Frontotemporal Dementia ("FTD") by a neurologist at the Mayo Clinic. (*Id.* at ¶¶ 16-17). FTD is a "progressive neurodegenerative disease [which] causes executive dysfunction and impairs a patient's judgment, insight, and decision-making abilities." (*Id.* at ¶ 17). Maribeth's neurologist opined that, at the time of her termination, Maribeth could not understand the benefits and consequences of converting her life insurance coverage under the Policy. (*Id.* at ¶ 22).

Three years after Maribeth's resignation, Edwin applied to Dearborn for the life insurance benefits under the Policy. (*Id.* at ¶ 29). Dearborn denied the claim because Maribeth never converted her basic life insurance policy to a personal policy. (*Id.* at ¶ 30). Edwin then made a claim against Beacon. (*Id.* at ¶ 32). Beacon denied the claim too. (*Id.*)

Maribeth died from complications with FTD on December 4, 2021—five years after her resignation. (*Id.* at ¶ 29). Plaintiffs now allege that Beacon breached its fiduciary duty to Maribeth and Edwin under ERISA by failing to inform Edwin or Maribeth of her rights under the Policy. (*Id.* at ¶ 41).

### III. Discussion

Plaintiffs' claim for breach of fiduciary duty is based on Beacon's alleged failure to "conduct an exit interview and inform Maribeth of her rights under the policy and/or explain to [Edwin] Maribeth's rights under the policy at the time of her termination." (*Id.*). And Plaintiffs claim that the Policy's time limitations to convert the policy and make premium payments should be equitably tolled because of Maribeth's mental incapacity. (*Id.* ¶ 39). Beacon asserts three reasons why Plaintiffs' claims fail on their face: (1) Beacon did not owe Plaintiffs a fiduciary duty to inform them of Maribeth's right to convert her basic life insurance policy to an individual policy

4

following her resignation; (2) Plaintiffs fail to establish Beacon acted with intent to disadvantage Maribeth; and (3) Plaintiffs are not entitled to equitable tolling of the period to convert Maribeth's plan or make premium payments.[1] (ECF No. 14 at 1).

Plaintiffs respond that Beacon did have an affirmative duty to inform Maribeth of her rights upon termination—especially in light of Beacon's knowledge of her mental illness. *See Brenner v. Metro. Life Ins.*, 2015 WL 1307394 (D. Mass. Mar. 23,2015) (holding that ordinarily "administrative" duties such as advising participants of conversion rights are not treated as fiduciary functions, but fiduciary duty might still be owed where, for example, fiduciary knew the insured might be incapacitated). Plaintiffs also believe that they need not plead that Beacon acted with an intent to disadvantage Maribeth. And they assert that equitable tolling should apply to toll the Policy's time limitations because of Maribeth's FTD diagnosis. (ECF No. 16 at 7-9).

ERISA statutorily obligates a fiduciary to discharge duties of a plan "solely in the interests of the participants and beneficiaries" with the care, skill, prudence, and diligence a prudent person would use and in accordance with documents and instruments governing the plan. 29 U.S.C. § 1104(a). "This duty also implicates '[c]onveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation.'" *Herman v. Cent. States, Se. and Sw. Areas Pension Fund*, 423 F.3d 684, 695 (7th

---

[1] Beacon also contends—in a footnote—that "to the extent Plaintiffs allege Beacon had a duty to administer their benefits, [Plaintiffs' claim] fails because Plaintiffs did not adequately plead exhaustion of administrative remedies." (ECF No. 14 at 1-2). Indeed, the Seventh Circuit has consistently held that a district court may require exhaustion of plan remedies before allowing the plaintiff to proceed with a lawsuit alleging the violation of an ERISA statutory provision. *See Robyns v. Reliance Standard Life Ins. Co*., 130 F.3d 1231, 1235 (7th Cir. 1997); *Deiwert v. Cigna Ins*., 2019 U.S. Dist. LEXIS 96568 (S.D. Ind. June 10, 2019) (granting motion for judgment on the pleadings where plaintiff failed to exhaust administrative remedies under ERISA). But the Seventh Circuit has made clear that while ERISA is silent on the issue of exhaustion, it "has long been recognized in this Circuit that the intent of Congress is best effectuated by granting district courts discretion to require administrative exhaustion." *Allegos v. Mt. Sinai Medical Center,* 210 F.3d 803, 808 (7th Cir.2000). And Plaintiffs plead that "[Edwin] exhausted all administrative remedies in connection with its claim to Dearborn." (ECF No. 2, ¶ 31). Once Edwin made his claim with Beacon and Beacon denied the claim, "Edwin exhausted all administrative remedies in connection with his claim to Beacon." (*Id.* at ¶ 32). Defendants undeveloped footnote argument will not sink Plaintiffs' claims where they have affirmatively plead exhaustion of all administrative remedies under the Policy.

5

Cir. 2005) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996)). To state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach harmed the plaintiff. *See, e.g.*, *Kamler v. H/N Telecomm. Serv., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002).

Beacon relies heavily on *Tuhey v. Ill. Tool Works, Inc*., 2017 WL 3278941 (N.D. Ill. Aug. 2, 2017). And the factual similarities are apparent. There, as here, Tuhey suffered from a degenerative neurological condition which his employer perceived as impacting his memory. *Id.* at *2-5). A year after his termination, Tuhey alleged that his employer breached its fiduciary duty under ERISA by failing to "inform Plaintiff of his rights to convert the long-term disability plan to an individual plan—something he learned too late to effect a conversion." *Id.* at *20. Tuhey, like Plaintiffs, did not allege the Policy documentation he received failed to meet ERISA's demands or that the plan documents required his employer to affirmatively notify him of his rights to convert. *Id.* at *19-20.

The Northern District of Illinois held that "[b]ecause Tuhey's right to convert arose from his idiosyncratic circumstances—namely, termination coupled with ongoing health issues that could qualify him for long-term disability—the danger of overburdening the fiduciary recognized by the Seventh Circuit precludes recovery for the alleged lack of disclosure here." *Id.* at *20 (citing *Cummings by Techmeier v. Briggs & Stratton Ret. Plan*, 797 F.2d 383, 387 (7th Cir. 1986) (holding that fiduciaries are not required to provide individualized attention to participants, as where an employee failed to elect survivorship option due to mental confusion)); *cf., Lucas v. Steel King Indus., Inc.*, 32 F. Supp. 3d 994, 1003-1006 (W.D. Wis. 2014) (finding critical fiduciary disclosure missing where employer did not inform employees of its replacing former life insurance arrangement with new insurance carrier, because the "right to convert in this case did not arise

6

from [the plaintiff's] individual circumstances" or "his illness" but from "an event that presumably would have triggered conversion rights for all employees").

And other courts have held similarly. *See Tuhey,* 2017 WL 3278941 at *20-22; *see also, Walker v. Fed. Express Corp.*, 492 Fed. Appx. 559, 561-62, 565-66 (6th Cir. 2012) (finding, where termination "triggered [the decedent's] right to convert his FedEx group life insurance coverage to an individual life insurance policy," that no language in ERISA required Fed Ex to notify decedent or his family of conversion rights); *Prouty v. Hartford Life & Acc. Ins.*, 997 F. Supp. 2d 85, 86-87, 90-91 (D. Mass. 2014) (stating that there is no ERISA obligation to provide plan participants with post-termination notice of insurance conversion rights).

Plaintiffs counter that *Tuhey* is an unpublished case that is distinguishable. They contend that the plaintiff in *Tuhey* "did not allege a severe cognitive condition similar to Frontotemporal Dementia that would cause him to be incapable of understanding his conversion rights and the consequences of not converting his LTD coverage to an individual policy." (ECF No. 16 at 10). Instead, Plaintiffs point to a line of other cases.

In *Eddy v. Colonial Life Ins. of Am.,* the D.C. Circuit held that an ERISA fiduciary "was required to do more than simply *misinform*, [the defendant] also had an affirmative obligation to *inform*—to provide complete and correct material information on [the plaintiff's] status and options." 919 F.2d 747, 751 (D.C. Cir. 1990). Relying on *Eddy*, the Seventh Circuit has held a fiduciary's duty to disclose material information includes not only a negative command—to not provide false or misleading information—but also an "affirmative obligation to communicate material facts affecting the interests of beneficiaries*." Kenseth v Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010).

Yet Plaintiffs' authority is both legally and factually distinguishable. In *Eddy,* the

7

plaintiff—who did not suffer from a cognitive impairment—asked his plan administrator if he could continue (not convert) his coverage after his employer cancelled its group insurance. *Eddy*, 919 F.2d at 748. The plan administrator correctly told Eddy that he could not continue his coverage because his employer was cancelling the plan. *Id.* But the plan administrator failed to inform Eddy that he could convert the group policy to an individual plan. *Id.* The D.C. Circuit Court held that "Eddy should not be penalized because he failed to comprehend the technical difference between 'conversion' and 'continuation'" and that his plan administrator "had a duty to provide the material information" when Eddy informed the plan administrator that his employer was cancelling its group coverage. *Id.* at 751-52. "Once Eddy had made clear his situation, [his plan administrator] had a duty to provide the material information." *Id.* at 752.

Here, Maribeth never asked about continuing coverage or converting her group life insurance policy to an individual plan. Likewise, Edwin did not request information on Maribeth's benefits until three years after Maribeth's employment ended. (ECF No. 2, ¶ 25). And, unlike *Eddy*, Plaintiffs do not allege that Maribeth was provided false, misleading, or incomplete information.

Similarly, Plaintiffs cannot rely on *Keneseth*. The core issue in *Keneseth* was that the plaintiff requested specific information from the plan's fiduciary and the fiduciary provided incomplete information in response. 610 F.3d 452. Again, Plaintiffs do not allege that Maribeth sought information from Beacon. Nor do they allege that Beacon failed to provide complete and accurate information to Edwin after he inquired three years later. Rather, they allege that "Beacon breached its fiduciary duty owed to Maribeth by failing to conduct an exit interview and inform Maribeth of her rights under the Policy and/or explain to [Edwin] Maribeth's rights under the Policy at the time of her termination." (ECF No. 2, ¶ 4).

8

The in-circuit case *Cummings v. Briggs & Stratton Ret. Plan* is relevant here. 797 F.2d 383 (7th Cir. 1986). Cummings was diagnosed with lung cancer and "gradually became mentally confused and disoriented." *Id.* at 386. Cummings eventually died without electing a beneficiary for his pension plan. *Id.* The plaintiffs in *Cummings* alleged that his employer breached its fiduciary duty because it "knew or should have known of Cummings' state of mental confusion" yet failed to inform him of his right to elect a survivorship option. *Id.*

The Seventh Circuit held that the "plan administrators had not violated any fiduciary responsibility mandated by ERISA" observing that "in a similar case, where the decedent did not make any effort to contact a knowledgeable company employee for further information or explanation, the district court held that the plan administrator satisfied the fiduciary obligation owed to the decedent." *Id.* at 387 (citing *Lee v. Union Elec. Co.*, 606 F. Supp. 316, 321 (E.D. Mo. 1985) ("[F]iduciaries are not expected to provide individualized attention to participants.")). "An opposite interpretation would impose an almost impossible burden on ERISA plan administrators to seek out and maintain sufficient current information about the health and individual needs of each plan member to enable the administrators to render personal service." *Id.* (citing *Allen v. Atl. Richfield Ret. Plan*, 480 F. Supp. 848, 850 (E.D. Pa. 1979), *aff'd*, 633 F.2d 209 (3d Cir. 1980)).

The Court sympathizes with Plaintiffs' predicament. Maribeth may well have been disadvantaged by a neurodegenerative disease of which Plaintiffs' Complaint alleges Beacon was aware. But the dangers of overburdening ERISA plan administrators carry equal weight. And the Seventh Circuit precedent reveals that because "[Maribeth's] right to convert arose from [her] idiosyncratic circumstances—namely, termination coupled with ongoing health issues that could qualify [her for conversion]—the danger of overburdening the fiduciary recognized by the Seventh Circuit precludes recovery for the alleged lack of disclosure here." *See Tuhey,* 2017 WL 3278941,

at *20 (citing *Cummings*, 797 F.2d at 387 (7th Cir. 1986); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000); *Lucas*, 32 F. Supp. 3d at 1003-1006). Beacon had no duty to inform Plaintiffs of Maribeth's conversion rights under ERISA. Because Beacon did not owe Maribeth a duty under the circumstances, the Court need not address whether Plaintiffs have sufficiently pled intentionality.

Having determined that Beacon had no duty to inform Plaintiffs of Maribeth's conversion rights, the Court must address whether Maribeth's condition equitably tolled her "time to pay premium payments and convert her basic life coverage" (ECF No. 2, ¶ 39), under the disability provision. Beacon supplied many cases in support of the notion that federal courts may not apply common law principles to ERISA claims where doing so would "alter the express terms of [the] written benefit plan[]." *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) (affirming summary judgment and denying plaintiff's request for equitable revision of defined plan terms); *see also Land v. Chicago Truck Drivers, Helpers, and Warehouse Workers Union (Independent) Health and Welfare Fund*, 25 F.3d 509, 511 (7th Cir. 1994) (affirming dismissal of claim and finding "ERISA supersedes any and all state laws relating to covered plans"); *Bollman Hat Co. v. Root*, 112 F.3d 113, 116 (3rd Cir. 1997) (holding common law could not override a provision in an ERISA-regulated plan); *Cinelli v. Security Pac. Corp.*, 61 F.3d 1437, 1444-45 (9th Cir. 1995) ("ERISA generally preempts common law theories . . . except where the application of general contract principles is not inconsistent with the purposes of ERISA."); *Parker v. BankAmerica Corp.*, 50 F.3d 757, 769 (9th Cir. 1995) (rejecting plaintiff's request for equitable estoppel where "awarding the former employees . . . benefits would contradict the express terms of the plan").

Under the Policy, premium payments for *voluntary* life insurance—which Plaintiffs admit

Maribeth did not carry—may be tolled for disability. (ECF No. 2-1 at 14). Yet the Policy's *basic* life insurance—which Maribeth did carry—does not toll premiums for disability. Rather, the Policy provides that employees can continue their basic life insurance coverage during periods of disability "provided all premium payments are paid when due." (*Id.* at 32). Plaintiffs admit that they did not make the premium payments when due. (ECF No. 2, ¶ 25).

Plaintiffs cite *Heimeshoff v Hartford Life & Accident Ins.* to support the notion that ERISA permits equitable tolling of a contractual time limit in extraordinary circumstances. 571 U.S. 99, 114 (2013). The *Heimeshoff* Court also endorsed the "principle that contractual limitations provisions ordinarily should be enforced as written," and that principle is "especially appropriate when enforcing an ERISA plan." *Id.* at 348. Plaintiffs fail to cite a single ERISA case applying *Heimeshoff's* "extraordinary circumstances" exception to waive a statute of limitations because of a plaintiff's mental capacity. Nor has the Court unearthed any such authority independently.

Plaintiffs do point the Court to *Di Joseph v. Std. Ins.,* an unpublished Seventh Circuit opinion in which the court ultimately held that the plaintiff's history of mental illness did not support a claim for equitable tolling. 776 Fed. Appx. 343 (7th Cir. 2019). That said, it did not foreclose the possibility that a plaintiff's mental incapacity could support a claim for equitable tolling in the context of ERISA. *Id.*

In *Di Joseph*, the plaintiff argued her mental incapacity prevented her from complying with the contractual time limits of an ERISA policy. *Id.* at 348. The Court recognized that "ERISA permits equitable tolling of a contractual time limit in extraordinary circumstances" and that the plaintiff bears the burden of showing that "her mental incapacity prevented her from managing her affairs and acting upon her legal rights." *Id.* at 349 (citing *Heimeshoff*, 571 U.S. at 114; *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996) ("mental illness tolls a statute of limitations only if the

illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them"). The Seventh Circuit determined that the district court properly found that equitable tolling was inappropriate under the facts of the case:

> The district court properly found that equitable tolling was not appropriate here. First, Di Joseph admitted in her complaint that there was never a time when her disabilities prevented her from managing her affairs or acting upon her legal rights. In fact, during the period of her supposed incapacity, her "mother became [Di Joseph's] caregiver and managed her daughter's financial and legal affairs," ensuring that her interests were protected. The record also shows that Di Joseph actively participated in the appeals process of her benefits claim and, through an attorney, initiated an unrelated legal proceeding during the time she asserts she was incapacitated.
>
> Finally, even if Di Joseph's legal interests were not protected, she has not raised a plausible claim in support of her argument for mental incapacity. The only details she provided regarding any mental impairment come from the letters she submitted from her psychologist and psychiatrist, both written in February 2013. Neither letter indicated that Di Joseph had mental disabilities that were so severe that she was excused from compliance with the reasonable time limitations of the policy. Because Di Joseph did not present factual allegations sufficient to raise a claim for equitable tolling above the speculative level, we affirm the district court's decision.

*Id.*

Although *Di Joseph* may be unpublished, it provides enough ammunition to allow Plaintiffs to survive a motion to dismiss. Maribeth suffered from FTD, a "progressive neurodegenerative disease (which) causes executive dysfunction and impairs a patient's judgment, insight, and decision-making abilities." (ECF No. 2, ¶ 17). Plaintiffs here do not admit "that there was never a time when [Maribeth's] disabilities prevented her from managing her affairs or acting upon her legal rights." In fact, the Complaint suggests the opposite. And there is no indication that Maribeth actively participated in any subsequent dispute. Most importantly, while the treating physicians in *Di Joseph* never said that the plaintiff's disabilities were so severe to excuse her from a reasonable time limitation, Maribeth's neurologist opined to that effect. The neurologist, according to Plaintiffs' Complaint, "stated at the time of Maribeth's termination, she did not[]

12

properly carry forward her life insurance because she was incapable of understanding the benefits and consequences of such a decision." (*Id.* at ¶ 22).

*Di Joseph* leaves open the possibility that mental incapacity could, in some instances, constitute an "extraordinary circumstance" which warrants equitable tolling. So too, the Second Circuit has acknowledged the possibility that mental incapacity might militate in favor of equitable tolling under ERISA. *See Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 514 (2d Cir. 2002). "The issue of whether a mental disability warrants equitable tolling of a filing deadline requires a *highly case-specific inquiry.*" *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002) (emphasis added). And without the benefit of discovery, the Court cannot determine whether Maribeth's "mental incapacity prevented her from managing her affairs and acting upon her legal rights." *Di Joseph,* 776 Fed. Appx. at 349 (citing *Miller*, 77 F.3d at 191). But viewing the facts in the light most favorably to Plaintiffs, there exists a plausible claim that Maribeth's right to convert or make her premium payments was equitably tolled because of her mental capacity—at least at this early stage in litigation.

### IV.     Conclusion

For these reasons, Defendant Beacon's Motion to Dismiss for failure to state a claim is GRANTED IN PART to the extent the Court finds that Beacon did not owe a duty to inform Plaintiffs of Maribeth's rights under the Policy upon her termination but is OTHERWISE DENIED.

SO ORDERED January 11, 2024.

    s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT