UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EDWIN M PRESNAL JR, et al., | |
| Plaintiffs, | |
| v. | Case No. 3:23-CV-290-CCB |
| DEARBORN NATIONAL LIFE INSURANCE COMPANY, et al., | |
| Defendants. | |

**OPINION AND ORDER**

Plaintiffs, the Estate of Maribeth Presnal and Edwin Presnal, sued Defendants Dearborn National Life Insurance Company ("Dearborn") and Beacon Health System, Inc. ("Beacon") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* to recover life insurance benefits. Pending before the Court are Plaintiffs' and Dearborn's cross-motions for summary judgment. (ECF 34, 41). Beacon also moved to join Dearborn's motion for summary judgment. (ECF 37).

Based on the applicable law and arguments, Dearborn's motion for summary judgment will be granted.

**I.   Background**

Maribeth Presnal was the Director of Nursing in the Cardiovascular Services Department at Beacon. As a Beacon employee, Ms. Presnal participated in a welfare benefit plan governed by ERISA, including a Term Life and AD&D plan funded by a

group policy issued by Dearborn to Beacon. (ECF 33-1 at 17-64). Ms. Presnal was enrolled in a basic term life insurance in the amount of $145,000. (*Id*. at 16).

To be eligible for life insurance under the group policy, Beacon employees must be "actively at work," defined as working at least 35 hours per week and paid regular earnings. (*Id*. at 20, 53). Coverage under the group policy will typically terminate if the participant is no longer actively at work.[1] For basic coverage, a participant may convert coverage under the group policy to an individual policy within 31 days after the life insurance under the policy ceases. (*Id*. at 29). The conversion period is extended by an additional 60 days if the terminated employee did not receive notice of her right to convert. (*Id*). To convert her coverage, the participant must submit to Dearborn a written application and the first premium for the individual life insurance policy. (*Id*).

Ms. Presnal's health started to decline, and she was terminated from her position at Beacon on December 31, 2016. (*Id*. at 13). Beacon did not provide notice to Ms. Presnal of her conversion rights, so Ms. Presnal was afforded an additional 60 days to convert her coverage to an individual policy. Ms. Presnal died on December 4, 2021. (ECF 33-2 at 7). On February 21, 2022, Plaintiff Edwin Presnal, Ms. Presnal's spouse, submitted a claim for life insurance benefits through counsel. (ECF 33-2 at 7). Dearborn notified Mr. Presnal that Ms. Presnal had not converted her coverage under the group policy to an

---

[1] If the participant has basic coverage and is disabled, coverage under the group policy may also be continued for 60 months following termination so long as all premiums are paid, the policy is in force, and coverage is not replaced with a group life insurance provided by a new carrier. (ECF 33-2 at 84). Plaintiffs do not contend that coverage continued under the disability provision. It is undisputed that Beacon terminated the group policy, effective January 31, 2019. (*Id*. at 85). Accordingly, even if the other requirements for continuing coverage due to disability were met, Ms. Presnal's coverage under the group policy would have ceased when the group policy was terminated on January 21, 2019.

2

individual policy because she did not timely send the requisite application or premium payment. (*Id*. at 85).

Plaintiffs sued Dearborn and Beacon under ERISA to recover the life insurance benefits. Plaintiffs do not dispute that Ms. Presnal did not convert her group policy to an individual policy. Instead, Plaintiffs argue that the time for Ms. Presnal to pay her premiums and convert her basic life coverage to an individual policy is equitably tolled due to Ms. Presnal's incapacity.

In the Court's Opinion and Order granting in part Beacon's motion to dismiss, the Court, under a previous presider, held that Beacon had no duty to inform Plaintiffs of Ms. Presnal's conversion rights, but that "there exists a plausible claim that Maribeth's right to convert or make her premium payments was equitably tolled because of her mental capacity—at least at this early stage in litigation." (ECF 22 at 13). The Court relied on an unpublished Seventh Circuit decision, *Di Joseph v. Std. Ins.*, 776 Fed. Appx. 343 (7th Cir. 2019), explaining that "*Di Joseph* leaves open the possibility that mental incapacity could, in some instances, constitute an 'extraordinary circumstance' which warrants equitable tolling." (ECF 22 at 13). Dearborn was not a party to Beacon's motion, and did not separately move to dismiss Plaintiffs' complaint.

In Dearborn's motion for summary judgment, it asks the Court to reconsider its earlier determination that equitable tolling could apply to extend the conversion period. Dearborn argues that the cases relied on by Plaintiffs only concern the applicability of equitable tolling to a policy's limitations period, and that equitable tolling has not been applied to extend other policy terms. Dearborn also relies on a Fourth Circuit decision,

3

*Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848 (4th Cir. 2023), that was not presented to the Court in the parties' briefing on the motion to dismiss where the court held that a plan's conversion period could not be equitably tolled. Dearborn also argues that, even if the conversion period could be equitably tolled, Plaintiffs failed to exhaust their administrative remedies.

II.     Analysis

While the doctrine of law of the case "establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit," the doctrine is "discretionary, not an inflexible dictate." *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 701 (7th Cir. 2024) (internal quotations and citations omitted). Departure from the doctrine is appropriate where the previous decision is clearly erroneous. *Id.*

In the Court's Opinion on Beacon's motion to dismiss, it relied on an unpublished Seventh Circuit opinion, *Di Joseph v. Standard Ins. Co.*, 776 Fed. Appx. 343 (7th Cir. 2019). *Di Joseph* concerned whether a three-year limitations period for bringing a legal action related to a long-term disability claim could be equitably tolled. 776 Fed. Appx. at 345. The Seventh Circuit noted, citing *Heimeshoff*, 571 U.S. at 114, that "ERISA permits equitable tolling of a contractual time limit in extraordinary circumstances." *Di Joseph*, 776 Fed. Appx. at 348. The contractual provision at issue in *Heimeshoff* was a three-year limitations period for a participant to pursue legal action. 571 U.S. at 103. The Supreme Court found that "[a]bsent a controlling statute to the contrary, a participant and a plan may agree by contract to a *particular limitations period*, even one that starts to run before the cause of action accrues, as long as the period is reasonable," and the

4

"principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan." *Id.* at 105-06, 108 (emphasis added). The Supreme Court also noted that, "even in the rare cases where internal review prevents participants from bringing § 502(a)(1)(B) actions within the contractual period, courts are well equipped to apply traditional doctrines that may nevertheless allow participants to proceed," such as when the participant "has diligently pursued both internal review and judicial review but was prevented from filing suit by extraordinary circumstances, equitable tolling may apply." *Id.* at 114 (emphasis added). In other words, neither *Di Joseph* nor *Heimeshoff* addressed whether equitable tolling could apply to a non-limitations contractual term in a plan governed by ERISA—such as the time to convert a group policy to an individual policy—only its applicability to a policy's limitations period to pursue internal and judicial review. Neither case suggests that equitable tolling could apply to extend other plan deadlines.

    Dearborn relies on *Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 852-54 (4th Cir. 2023), a case that was not previously cited in the parties' briefing on Beacon's motion to dismiss. Hayes, like Ms. Presnal, failed to convert his life insurance coverage to an individual policy before the policy deadline. *Hayes*, 60 F.4th at 850-51. The plan administrator acknowledged that Hayes was incapacitated due to his medical condition, but denied the request for benefits for failure to timely convert. *Id.* at 850-851. The plan beneficiary filed an ERISA action seeking to recover benefits under § 1132(a)(1)(B), arguing that equitable tolling should apply to extend the life insurance conversion deadline because Hayes was incapacitated during the conversion period. *Id.*

5

at 852. The Fourth Circuit, in holding that equitable tolling cannot extend the conversion deadline because a conversion deadline does not operate as a limitations period, explained:

> [W]e conclude the plan administrator did not abuse its discretion in deciding the terms of the plan do not provide for equitable tolling. To be sure, federal courts generally apply a presumption that federal *statutes of limitations* can be equitably tolled. But that is not because courts have freewheeling authority to allow equitable tolling whenever they think it makes sense; rather, it reflects a prediction about legislative intent. In short, Congress is presumed to incorporate equitable tolling into federal statutes of limitations because equitable tolling is part of the established backdrop of American law. For that reason, the Supreme Court has emphasized the presumption in favor of equitable tolling applies only to time periods that operate as a statute of limitations…. [t]he life insurance conversion deadline at issue here is not a statute of limitations, nor does it operate as one. Statutes of limitations establish the period of time within which a claimant must bring an action…no cause of action for benefits accrues when a participant misses a conversion deadline. Indeed, a participant whose policy has expired, unconverted, has no benefits due under the plan for any later occurrence because that participant lacks coverage.

*Id.* at 852-854 (emphasis in original) (quotations and citations omitted)

The Fourth Circuit also found that the beneficiary's claim for benefits under 29 U.S.C. § 1132(a)(3) did not provide legal authority to alter the plan's terms. Section 1132(a)(1)(B), which states that a civil action may be brought by a beneficiary to recover benefits due to him "under the terms of the plan," does not permit "a court to alter those terms." *Hayes*, 60 F.4th at 852. The court reasoned that "'the statutory language speaks of *enforcing* the terms of the plan, not of *changing* them.' Subsection (a)(1)(B) thus does not allow 'a change, akin to the reform of a contract,' because doing so 'seems less like the simple enforcement of a contract as written and more like an equitable remedy.'" *Id.* (emphasis in original) (quoting *Cigna Corp. v. Amara*, 563 U.S. 421, 435-36 (2011)).

The Fourth Circuit acknowledged that ERISA contains another provision that sometimes allows courts to "go beyond enforcing contracts as written." *Id. at 854.* Under § 1132(a)(3), a plan participant, beneficiary, or fiduciary may bring a suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). But because the plaintiff in *Hayes* only sought recovery of benefits under § 1132(a)(1)(B) and did not seek equitable relief under § 1132(a)(3), the court did not address whether Hayes could have obtained relief under § 1132(a)(3). *Id.* at 855.

Plaintiffs do not specify whether their ERISA claim is under § 1132(a)(1)(B) or § 1132(a)(3), or argue that Plaintiffs are seeking equitable relief under § 1132(a)(3). Plaintiffs are seeking benefits under the basic life insurance policy—a compensatory form of relief—so the Court presumes their claim for benefits is under § 1132(a)(1)(B). *See Buckley Dement, Inc. v. Travelers Plan Adm'rs of Illinois, Inc.*, 39 F.3d 784, 788 (7th Cir. 1994) (explaining that equitable relief available under §1132(a)(3) "is the traditional injunctive, restitutionary, noncompensatory type of relief"). Further, to obtain equitable relief under § 1132(a)(3), a plaintiff must show the defendant violated ERISA or a plan's terms. *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 545 (7th Cir. 2022). The Court, under a previous presider, held that Beacon did not have a duty to inform Ms. Presnal of her conversion rights. (ECF 22 at 10). Plaintiffs do not otherwise argue Beacon or Dearborn violated the group policy's terms or ERISA. Thus, Plaintiffs have not established that they are entitled to equitable relief under § 1132(a)(3).

In an attempt to distinguish this case from *Hayes*, Plaintiffs argue that the Seventh Circuit applies the doctrine of equitable tolling more liberally than the Fourth Circuit, citing *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 875 (7th Cir. 1997). But *Doe* also concerned a policy's contractual limitation period. *Doe,* 112 F.3d at 875 ("There is no doubt that the contractual limitation here—39 months from the date of the services for which benefits are sought—is reasonable in general and in this case, where even though the internal appeals process was protracted, the employee, represented throughout by counsel, had almost a year and a half in which to bring his suit before the limitations period expired."). The other cases relied on by Plaintiffs also only concern equitable tolling of a limitations period. *See Viti v. Guardian Life Ins. Co. of Am.*, 817 F. Supp. 2d 214, 224 (S.D.N.Y. 2011) (deciding whether to equitably toll an ERISA claim barred by a three-year contractual limitations period); *Chapman v. Choice Care Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002) (deciding whether to equitably toll the 60-day limitations period for the filing of the plaintiff's administrative appeal); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 ("Tolling doctrines stop the statute of limitations from running even if the accrual date has passed…[equitable tolling] permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.").

Indeed, in Plaintiffs' briefing, they acknowledge that equitable tolling has been applied to limitations periods. *See* ECF 42 at 7 ("The rule in federal courts is the tolling doctrines of equitable tolling and equitable estoppel are grafted to federal statutes of

8

limitations."). Plaintiffs fail to address how a conversion period operates as a limitations period. The *Hayes* decision, which directly addresses the applicability of equitable tolling to a conversion period and holds that a conversion period is distinct from a limitations period, is persuasive. *See Hayes*, 60 F.4th at 853-54 ("Statutes of limitations establish the period of time within which a claimant must bring an action…. no cause of action for benefits accrues when a participant misses a conversion deadline."). Plaintiffs do not provide any caselaw or statutory authority to support the conclusion that a deadline to convert under a plan's terms can be equitably tolled, or that the doctrine of equitable tolling can apply to extend deadlines in a plan other than a limitations period. The Court finds that doctrine of equitable tolling cannot extend the deadline for Plaintiffs to convert the group policy to an individual policy under the plan's terms.

Ms. Presnal did not timely convert her coverage to an individual policy, and the deadline to do so cannot be equitably tolled. Since Ms. Presnal did not maintain her life insurance coverage, Plaintiffs cannot assert a claim for life insurance benefits. Therefore, Dearborn and Beacon are entitled to judgment as a matter of law. Since Plaintiffs have failed to show that they are entitled to benefits under the life insurance policy, the Court need not address whether Plaintiffs exhausted their administrative remedies.

### III.    Conclusion

For the foregoing reason's, Dearborn's motion for summary judgment (ECF 34) is **GRANTED**. Beacon's motion to join Dearborn's motion for summary judgment (ECF 37) is also **GRANTED**. Dearborn and Beacon are entitled to judgment as a matter of law

on all of Plaintiffs' claims. The Clerk is directed to enter judgment in Dearborn's and Beacon's favor. Plaintiffs' motion for summary judgment (ECF 41) is **DENIED**.

SO ORDERED on August 15, 2025.

                                                 /s/ *Cristal C. Brisco*
                                                 CRISTAL C. BRISCO, JUDGE
                                                 UNITED STATES DISTRICT COURT